**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1477**

BEACH MART, INC.,

Appellant,

v.

L&L WINGS, INC.,

Appellee,

and

SHEPARD R. MORROW,

Defendant.

**No. 18-1486**

BEACH MART, INC.; SUPER WINGS, LLC,

Appellants,

v.

L&L WINGS, INC.; SHEPARD R. MORROW,

Appellees.

**No. 18-1517**

L&L WINGS, INC.,

        Appellant,

        v.

BEACH MART, INC.; SUPER WINGS, LLC; SHEPARD R. MORROW,

        Appellees.

─────────────

**No. 18-1975**

─────────────

BEACH MART, INC.,

        Appellant,

        v.

L&L WINGS, INC.,

        Appellee.

─────────────

Appeals from the United States District Court for the Eastern District of North Carolina, at Elizabeth City.  Terrence W. Boyle, Chief District Judge; James C. Fox, Senior District Judge.  (2:11-cv-00044-BO; 2:14-cv-00052-BO)

─────────────

Argued:  May 7, 2019                       Decided:  August 1, 2019

─────────────

Before KEENAN, WYNN, and FLOYD, Circuit Judges.

─────────────

Affirmed in part, vacated in part, and remanded with instructions by unpublished opinion. Judge Keenan wrote the opinion, in which Judge Wynn and Judge Floyd joined.

─────────────

**ARGUED:** Charles A. Burke, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina, for Appellants/Cross-Appellees.  Richard S. Taffet, MORGAN LEWIS & BOCKIUS, LLP, New York, New York, for Appellees/Cross-Appellants.  **ON**

**BRIEF:** Stephen Forest Shaw, WOMBLE BOND DICKINSON (US) LLP, Greensboro, North Carolina, for Appellants/Cross-Appellees. Michael E. Kenneally, Washington, D.C., Timothy J. Stephens, MORGAN LEWIS & BOCKIUS, LLP, New York, New York, for Appellees/Cross-Appellants.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

The heart of the parties' dispute in this case is the ownership status of a trademark, "WINGS," which both parties have used to designate their stores selling beach merchandise over the course of many years. Despite the straight-forward nature of this factual dispute, the course of this litigation has taken a lengthy and circuitous path. Defendant and cross-appellant L&L Wings, Inc. (L&L) purports to be the owner of the mark, but intentionally withheld from its licensee, plaintiff-appellant Beach Mart, Inc., the fact that L&L itself had obtained a license for the mark from a third-party owner, Shepard Morrow.

Beach Mart argues that the existence of this prior licensing agreement with Morrow (the Morrow license) casts doubt on L&L's assertion of ownership in the mark and the validity of Beach Mart's own license with L&L. The district court concluded that L&L had acted in bad faith by failing to disclose the Morrow license during discovery and imposed sanctions on L&L, which sanctions included the dismissal of some of L&L's counterclaims against Beach Mart. After the case was assigned to a different district judge, the court entered summary judgment in favor of L&L on Beach Mart's claims of fraudulent inducement, negligent misrepresentation, unfair and deceptive trade practices, false or fraudulent trademark registration, and trademark cancellation. Beach Mart appeals this award of summary judgment, and L&L cross-appeals the district court's dismissal of its counterclaims as a sanction for litigation misconduct.

Upon our review, we conclude that the district court erred in awarding summary judgment to L&L. We also conclude that the district court did not abuse its discretion in

4

imposing sanctions on L&L. We therefore affirm in part, and vacate in part, the district court's judgment. We remand the case for trial by a different district judge, based on the comments made by the judge who entered the summary judgment order in this case.

I.

The relationship between the parties is longstanding. We will begin by describing the history of the "WINGS" mark, including the circumstances surrounding the Morrow license that L&L entered with Morrow, the prior registrant. We next will discuss the licensing agreement between Beach Mart and L&L, executed more than 10 years after the Morrow license, and L&L's representation to Beach Mart that it was the exclusive owner of the mark. Finally, we will summarize the protracted seven-year proceedings in the district court.

A.

Since 1978, L&L has operated a network of retail stores in several states selling beach apparel and related merchandise under the name "WINGS." On multiple occasions beginning in 1987, L&L sought federal trademark registration for the "WINGS" mark from the United States Patent and Trademark Office (PTO). The PTO denied those registration applications based on the prior registration of the "WINGS"

mark by Piedmont Industries, Inc., a clothing manufacturer and Morrow's predecessor-in-interest, which had been using the "WINGS" mark on clothing items since the 1930s.[1]

Following several years of negotiations between the parties, Morrow and L&L agreed to the terms of the Morrow license in 1993. That license listed five trademark registrations owned by Morrow, and stated that L&L

> [a]cknowledges that the ownership of all right, title and interest in the Registrations is and remains solely vested in [Morrow] and that such Registrations are prima facie evidence of the validity of the registered marks, of [Morrow's] ownership of the registered marks, and of [Morrow's] exclusive right to use the registered marks in commerce or in connection with the goods specified in the Registrations.

L&L also agreed to assist Morrow in maintaining the mark, including seeking to obtain from the PTO registration of the mark for use in retail stores. Under the terms of the license, Morrow would be "the sole owner of any such registration."

In exchange for use of the "WINGS" mark, L&L agreed to pay Morrow ten annual royalty installments. Section 8 of the Morrow license established a procedure allowing for termination of the agreement in the event of non-payment:

> [Morrow] may terminate this Agreement at any time in the event that [L&L] fails to make a Royalty Payment. In such event, [Morrow] shall deliver written notice of such non-payment to [L&L] and allow [L&L] fifteen (15) days after the delivery of such notice in which to remit the Royalty Payment (the "Cure Period"). If the Royalty Payment is not made during the Cure Period, then this Agreement shall terminate fifteen (15) days after the date of such notice.

The Morrow license did not otherwise contain a termination date.[2]

---

[1] For the sake of clarity, we will refer to Piedmont Industries, Inc. and Morrow collectively as "Morrow."

L&L remitted the first scheduled royalty payment in 1993 but failed to make the remaining nine payments. In June 1994, Morrow's counsel sent L&L's counsel a letter requesting payment of the overdue royalties (the first demand letter). Enclosed with that letter was a draft application for registration of "WINGS" as a service mark based on L&L's usage, which required further information from L&L. When L&L still failed to make the overdue royalty payment, Morrow's counsel sent a second letter to L&L's counsel in August 1994, again requesting payment (the second demand letter). L&L did not respond to these demands for payment, and Morrow did not take any further action to collect royalties from L&L or to terminate the license.

L&L continued to use the "WINGS" mark to designate its stores. Meanwhile, a former employee of L&L founded Beach Mart in 1994. Around that time, Beach Mart and L&L entered into a one-year licensing agreement that authorized Beach Mart to use the "WINGS" mark on two stores selling beach merchandise in North Carolina. Although that agreement expired by its terms at the end of 1995, Beach Mart continued to

---

[2] Section 2(c) of the license provided that

> In the event that this Agreement has not been earlier terminated pursuant to Section 8 hereto ten years from the date hereof and the Mark has not been assigned to [L&L] . . . , then the license granted by this Agreement shall become royalty-free and [L&L] shall thereafter have no further obligation to pay royalties for the use of [the] Mark.

As explained below, we conclude that the record contains factual disputes on the question of termination. We therefore do not address Beach Mart's contention that Morrow had the option to convert the arrangement into a royalty-free license under Section 2(c) of the agreement.

7

use the "WINGS" mark at those locations and several additional stores for another ten years. During the same time period, L&L entered into numerous licensing agreements with other licensees for use of the same "WINGS" mark.

In 2005, Beach Mart and L&L entered into the licensing agreement that precipitated the dispute in this case (the 2005 license). The 2005 license required Beach Mart to cease using the "WINGS" mark, but authorized Beach Mart to use a variation of that mark, namely, "BIG WINGS" or "SUPER WINGS." Notably, L&L did not disclose to Beach Mart the existence of the Morrow license, L&L's prior acknowledgement that Morrow was the owner of the mark, or the fact that Morrow held registrations for the "WINGS" mark. To the contrary, the 2005 license stated that

> L&L Wings is the owner of the unregistered service mark 'WINGS,' and any and all rights and assets, including, but not limited to, goodwill, accruing and/or arising from the use of the mark 'WINGS' and any similar name.

Beach Mart also agreed not to "[c]ontest [L&L's] *exclusive ownership* of all rights to the name 'WINGS' and any similar name" (emphasis added).

By 2008, all Morrow's trademark registrations either had expired or had been cancelled by the PTO. Between 2008 and 2012, L&L obtained its own registrations for "WINGS" and related marks. By 2012, L&L operated 30 retail stores in several states and has continued to operate its stores under the "WINGS" mark throughout the course of this litigation.

In 2011, L&L notified Beach Mart of L&L's intent to terminate the 2005 license. L&L alleged that Beach Mart had failed to abide by certain provisions in the 2005 license

8

imposing restrictions on Beach Mart's use of the "WINGS" mark, and contended that Beach Mart's actions had caused customer confusion. At that time, Beach Mart still was unaware of the Morrow license and L&L's status as a licensee under that agreement.

Beach Mart filed suit against L&L in 2011, alleging that L&L had breached the 2005 license by terminating the parties' agreement without cause. L&L filed counterclaims for breach of contract, trademark infringement, and related claims. During discovery proceedings, L&L failed to disclose the existence of the Morrow license, or the fact that L&L was a licensee of the "WINGS" mark. Instead, immediately before the scheduled trial, Beach Mart learned about the Morrow license from one of L&L's third-party licensees. Because the ownership status of the mark was a fundamental issue in the case, the district court granted Beach Mart's motion to amend its complaint.

The district court also granted Beach Mart's motion for sanctions. In a thorough opinion, the court found that Shaul Levy, L&L's founder, president, and corporate designee, had engaged in "egregious discovery conduct." Most notably, Levy intentionally had withheld his knowledge of the Morrow license and other agreements that L&L had executed with third-party licensees. The court further concluded that L&L had acted in bad faith by willfully failing to disclose the existence of the Morrow license. As a sanction for this discovery misconduct, the court awarded Beach Mart its costs and attorneys' fees related to Beach Mart's attempts to discover the withheld documents. The court also precluded L&L from "asserting trademark infringement and unfair competition

9

claims against Beach Mart," and from "seeking any form of equitable relief" or asserting equitable defenses related to Beach Mart's operation of its current stores.

In its amended complaint, Beach Mart alleged state law claims of fraudulent inducement to contract, negligent misrepresentation, and unfair and deceptive trade practices, as well as federal claims of trademark registration cancellation and false or fraudulent registration. Beach Mart also sought a declaratory judgment that Beach Mart is entitled to use the "WINGS" mark on its stores in the Outer Banks of North Carolina without permission from L&L.[3] Beach Mart's claims rested primarily on L&L's failure to disclose the Morrow license before the parties entered into the 2005 license. In Beach Mart's view, the Morrow license demonstrated that Morrow, not L&L, was the owner of the "WINGS" mark, and that L&L's misrepresentations regarding ownership of the mark amounted to fraud. Beach Mart similarly asserted that L&L fraudulently obtained its trademark registrations by withholding the same information from the PTO.

After the retirement of Judge James C. Fox, the district judge who oversaw the discovery process, the case was reassigned to Judge Terrence W. Boyle. Shortly after the case was reassigned to Judge Boyle, the court granted summary judgment in favor of L&L on all Beach Mart's claims.[4] The court concluded that the Morrow license had

---

[3] In the alternative, Beach Mart sought a declaration that L&L had no lawful basis to terminate the 2005 license and that Beach Mart could continue to use the "SUPER WINGS" mark pursuant to that agreement. That alternative claim is not at issue in this appeal.

[4] Judge Boyle also granted summary judgment to Beach Mart on L&L's contract-based counterclaims. L&L does not appeal this decision.

terminated in 1994 and, thus, that license had no impact on L&L's claim to ownership of the mark. Relatedly, the court found that L&L did not intend to deceive the PTO by failing to disclose L&L's knowledge of the Morrow license. The court separately concluded that Beach Mart's negligent misrepresentation and trademark cancellation claims were barred as a matter of law. The district court also denied Beach Mart's request for declaratory judgment as well as Beach Mart's request for attorneys' fees.

Beach Mart appeals the award of summary judgment to L&L and the denial of Beach Mart's petition for attorneys' fees. L&L cross-appeals the portion of Judge Fox's sanctions order precluding L&L from asserting its trademark rights against Beach Mart.[5]

## II.

In accord with the chronological order of the proceedings in this case, we first address L&L's appeal of the district court's sanctions order. L&L argues that the court abused its discretion in imposing preclusive sanctions that prevent L&L from asserting its trademark rights against Beach Mart. In L&L's view, these sanctions were unreasonably severe, and were not necessary to deter future discovery misconduct by L&L or to remedy any prejudice to Beach Mart. We disagree with L&L's arguments.

We review the district court's sanctions award for abuse of discretion. *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018).

---

[5] L&L does not appeal the portion of the sanctions order awarding attorneys' fees and costs to Beach Mart related to L&L's litigation misconduct.

11

Courts are authorized under Federal Rule of Civil Procedure 37 to impose a variety of sanctions for discovery abuses, including partial or complete dismissal of an action. *See* Fed. R. Civ. P. 37(b)(2)(A)(v). In determining the appropriate sanctions to impose under Rule 37, we consider "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998).

Courts also have the inherent power to dismiss a case "when a party deceives [the] court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (citation omitted). Before entering a dismissal order pursuant to this inherent authority, courts consider similar factors to those under Rule 37, namely, the degree of culpability of the wrongdoer; the prejudice to the judicial process and the victim caused by the misconduct; the availability of other adequate sanctions; and the public interest. *Id.* at 373-74 (citation omitted). These factors reflect the "great[] caution" courts must exercise before imposing the severe sanction of dismissal. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993).

In the present case, Judge Fox dismissed some of L&L's counterclaims and imposed preclusive sanctions within the scope of both Rule 37 and the court's inherent authority. The court set forth detailed reasoning and factual findings in support of these

12

sanctions. Focusing on Levy's false deposition testimony, the court found that L&L had acted in bad faith in withholding the Morrow license and other important information during discovery. The court also found that L&L's misconduct had caused "substantial" prejudice to Beach Mart and the court, requiring the court to "reset" the case. The court emphasized that monetary sanctions would be insufficient to deter future discovery violations by L&L given the "willful nondisclosure" and "gamesmanship" in which L&L had engaged.

Concluding that preclusive sanctions were both warranted and equitable, the court barred L&L from asserting trademark infringement and unfair competition claims against Beach Mart, and from "seeking any form of equitable relief from Beach Mart (including, but not limited to, injunctive relief, disgorgement of profits, or any other equitable defense)." The court limited the sanctions to disputes involving stores already operated by Beach Mart. The court accordingly dismissed the counterclaims in which L&L asserted claims of trademark infringement against Beach Mart. The court's order had no impact on L&L's ability to protect its interests in the mark elsewhere.

We disagree with L&L's contention that the sanctions order prevents L&L from asserting claims or defenses related to any incidents that have not yet occurred. Instead, we read the order as precluding L&L from raising the specified claims and defenses with respect to past violations only. We therefore decline as unnecessary L&L's request to "modify" the district court's order for exclusive application to past violations.

With this understanding in mind, we conclude that the district court did not abuse its discretion in imposing preclusive sanctions on L&L. Notably, L&L does not

13

challenge the court's factual finding that L&L's corporate designee provided false testimony, that L&L intentionally withheld the Morrow license, or that L&L had acted willfully and in bad faith. Indeed, the record plainly supports the district court's conclusion that L&L acted with a high degree of culpability. *See Projects Mgmt. Co.*, 734 F.3d at 376 (affirming dismissal order when sanctioned party had "intentionally acted throughout the pre-trial process to hide the truth from both [the opposing party] and from the court").

The substantial prejudice suffered by Beach Mart similarly is apparent from the record. L&L's misconduct disrupted the primary factual assumption on which Beach Mart had been operating, namely, that L&L was the owner of the "WINGS" mark as L&L claimed. When Beach Mart learned of the Morrow license after 18 months of discovery, the theory of Beach Mart's case fundamentally shifted. As a result, Beach Mart was forced to file an amended complaint asserting entirely different bases for relief years into the litigation, and the court was required to reschedule the planned trial date and oversee new pleadings and additional discovery. We thus agree with the district court that the prejudice caused by L&L's discovery abuses was significant.

Despite the general public policy in favor of deciding cases on the merits, preclusive sanctions may be necessary "to preserve the integrity of the judicial process in order to retain confidence that *the process works to uncover the truth*." *Projects Mgmt. Co.*, 734 F.3d at 376 (citation omitted). In the present case, the court made a specific factual finding that only severe preclusive sanctions would deter L&L from engaging in similar misconduct in the future. Although L&L disagrees with this assessment, given

the severity of L&L's willful discovery abuses, we defer to the district court's determination that preclusive sanctions were a necessary deterrent.

In evaluating the appropriate sanctions to be imposed in this case, the district court carefully evaluated all the relevant circumstances and exercised the "greatest caution" required before dismissing a party's claims. *Shaffer Equip. Co.*, 11 F.3d at 462. We therefore affirm the district court's order imposing preclusive sanctions on L&L.[6]

III.

We turn to consider Beach Mart's appeal of the district court's summary judgment order. We review the district court's decision granting summary judgment de novo. *Berkenfeld v. Lenet*, 921 F.3d 148, 153 (4th Cir. 2019). A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting this review, we construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019). We do not weigh the evidence or make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018).

A.

---

[6] Based on Judge Fox's dismissal of L&L's counterclaims, Beach Mart sought an award of attorneys' fees as the prevailing party under the Lanham Act, 15 U.S.C. § 1117(a), which request Judge Boyle denied. Based on our decision vacating in part Judge Boyle's summary judgment order, we remand the issue of attorneys' fees to be resolved by the district court at the conclusion of the case.

We begin with Beach Mart's contention that the district court erred in granting summary judgment to L&L on the negligent misrepresentation claim. Beach Mart argues that L&L had a duty to disclose the existence of the Morrow license, because L&L was in a position of superior knowledge regarding that agreement. According to Beach Mart, because the Morrow license was not publicly available, Beach Mart could not have discovered L&L's status as Morrow's licensee absent L&L's disclosure of that information.

L&L argues in response that it did not have a duty to disclose this information in an arms-length commercial transaction. L&L also asserts that Beach Mart did not justifiably rely on any omission by L&L because, in L&L's view, Morrow's claim of superior ownership in the mark was readily discernible based on the availability of Morrow's registrations in the public domain. We disagree with L&L.

To establish a negligent misrepresentation claim under North Carolina law, a plaintiff must show that (1) he justifiably relied, (2) to his detriment, (3) on information provided without reasonable care, (4) by a person who owed the relying party a duty of care. *Jordan v. Earthgrains Cos.*, 576 S.E.2d 336, 339 (N.C. Ct. App. 2003). Parties to a contractual relationship, negotiating at arms-length and with similar bargaining power, generally do not owe each other any duties outside that relationship. *Highland Paving Co. v. First Bank, LLC*, 742 S.E.2d 287, 292-93 (N.C. Ct. App. 2013); *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 581 S.E.2d 68, 74 (N.C. Ct. App. 2003). However, one party to the transaction owes the other a duty "to provide accurate, or at least negligence-free" information if the first party had exclusive access to or control of the information at

16

issue, and the other party "had no ability to perform any independent investigation." *Rountree v. Chowan Cty.*, 796 S.E.2d 827, 832 (N.C. Ct. App. 2017) (quoting *Kindred of N.C., Inc. v. Bond*, 584 S.E.2d 846, 853 (N.C. Ct. App. 2003)) (internal quotation marks omitted) (emphasis omitted). To establish justifiable reliance, a plaintiff must have made a reasonable inquiry into the misrepresentation and been denied the opportunity to investigate, or otherwise show that it could not have learned the truth by exercising due diligence. *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 781 S.E.2d 1, 11 (N.C. 2015).

In the present case, the district court summarily concluded that L&L did not owe a duty to Beach Mart based on their commercial relationship. However, the court erred in failing to consider whether the exception to the general rule regarding disclosure of information in commercial transactions, namely, when one party controls the relevant information, was applicable here. *See Rountree*, 796 S.E.2d at 832. Instead, the court rejected the negligent misrepresentation claim on the basis that because the Morrow *registrations* were publicly available, Beach Mart could have discovered Morrow's interest in the mark. However, Beach Mart's negligent misrepresentation claim is based on L&L's failure to disclose its status as licensee of Morrow, not on the mere existence of Morrow's prior registrations. It is undisputed that the Morrow license was not available in the public domain, and L&L points to no evidence in the record suggesting that Beach Mart could have discovered the license on its own.

Given this record, we conclude that the district court erred in granting summary judgment to L&L on Beach Mart's negligent misrepresentation claim. We remand for a

17

jury to answer the factual questions regarding Beach Mart's ability to investigate L&L's assertion of ownership and to discover the license through due diligence.[7] *See Kindred*, 584 S.E.2d at 853; *see also Dallaire v. Bank of America, N.A.*, 760 S.E.2d 263, 267 (N.C. 2014) (explaining that whether a party's reliance is justified generally is a factual question to be decided by a jury).

B.

We next consider the district court's award of summary judgment to L&L on Beach Mart's claim that L&L's trademark registrations should be cancelled because L&L abandoned its rights in the "WINGS" mark. Beach Mart argues that L&L abandoned its rights by engaging in "naked licensing," that is, by entering into licensing agreements with numerous third parties while failing to exercise control over the quality of the goods sold by those licensees. Thus, Beach Mart contends that L&L's registrations are subject to cancellation under 15 U.S.C. §§ 1064, 1119.

L&L responds that Beach Mart is estopped from asserting a trademark abandonment theory. Under a theory of licensee estoppel, L&L asserts that Beach Mart, as a licensee of the mark, may not receive the benefit of the mark while attacking its

---

[7] We observe that earlier in the litigation, Judge Fox found that the PTO had issued registrations for hundreds of variations on the "WINGS" mark to numerous registrants in addition to Morrow. As a result, Judge Fox concluded that it would have been unduly burdensome for Beach Mart to have investigated L&L's claim of ownership by asking all those registrants whether they had entered into licenses with L&L. These findings arose in the context of Beach Mart's motion to amend its complaint. We leave for the jury to consider the weight of such evidence on remand.

validity. The district court agreed with L&L's reasoning and held that this equitable doctrine barred Beach Mart's naked licensing claim.

"'Naked licensing' occurs when the licensor fails to exercise adequate quality control over the licensee." *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010) (citation omitted). Such uncontrolled licensing may cause the trademark to stop functioning "as a symbol of quality and a controlled source." *Id.* In such a case, the court may find that the trademark has been abandoned and that cancellation of the trademark's registration is appropriate. *Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 598 (9th Cir. 2002); Restatement (Third) of Unfair Competition § 33 (Am. Law Inst. 1995); *see* 15 U.S.C. § 1064(3) (abandonment of a registered mark is grounds for cancellation of registration); *id.* § 1119 (court may order the cancellation of trademark registrations).

Some courts nevertheless have held that "a licensee is estopped to contest the validity of the licensor's title during the course of the licensing arrangement," *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975), because a licensee may not "enjoy the use of the licensed mark while at the same time challenging the mark as being invalid," 3 *McCarthy on Trademarks & Unfair Competition* § 18.63 (5th ed. June 2019 update); *see also John C. Flood of Va., Inc. v. John C. Flood, Inc.*, 642 F.3d 1105, 1110-11 (D.C. Cir. 2011); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000). As an equitable doctrine, however, licensee estoppel generally will not be applied by a court if doing so would cause an inequitable

result. *See John C. Flood of Va., Inc.*, 642 F.3d at 1110-11 (collecting cases); *McCarthy* § 18:63; Restatement § 33 cmt. d.

We conclude that L&L's assertion of licensee estoppel is barred by Judge Fox's sanctions order. The sanctions order precluded L&L from "seeking any form of equitable relief from Beach Mart (including, but not limited to, injunctive relief, disgorgement of profits, *or any other equitable defense*)," with respect to Beach Mart's use of the "WINGS" mark on its current stores (emphasis added). L&L's assertion of licensee estoppel satisfies both elements of this sanction. Under the broad language of the order, the term "equitable defenses" encompasses licensee estoppel as an equitable defense to Beach Mart's claim of trademark cancellation. And L&L's reliance on licensee estoppel relates to Beach Mart's use of the "WINGS" mark.

Because Judge Fox's sanctions order precludes L&L from asserting a theory of licensee estoppel, we hold that Judge Boyle erred in later granting summary judgment to L&L on that basis. We therefore remand for trial the question whether L&L abandoned its registered mark by engaging in naked licensing, and whether cancellation of L&L's registrations under 15 U.S.C. §§ 1064, 1119 is warranted.[8]

C.

---

[8] Beach Mart also appeals the district court's denial of leave to supplement the complaint with additional allegations regarding the trademark cancellation and fraudulent registration claims. We conclude that the district court did not abuse its discretion in denying leave to amend given the "late stage of the[] proceedings."

Beach Mart next advances a global argument addressing the district court's award of summary judgment on all its substantive claims. According to Beach Mart, the district court erred in awarding summary judgment to L&L because there were disputed issues of material fact relevant to Beach Mart's claims of fraudulent inducement to contract, negligent misrepresentation, unfair and deceptive trade practices, false or fraudulent trademark registration, and trademark cancellation. Beach Mart focuses first on the district court's conclusion that the Morrow license terminated in 1994, and observes that the core factual issue regarding whether and when that license terminated remains in dispute. Beach Mart also asserts that even if the Morrow license had terminated, another disputed factual issue remains, namely, L&L's misrepresentation of ownership rights in the "WINGS" mark based on L&L's knowledge that Morrow had established trademark priority based on his decades of prior use of the mark.

L&L responds that the "unequivocal" record establishes that the Morrow license terminated in 1994 and that, therefore, all Beach Mart's claims fail as a matter of law. L&L also asserts that the record lacks any evidence that L&L acted with an intent to deceive Beach Mart or the PTO. We disagree with L&L's position.

i.

We begin with the issue of the Morrow license. First, we agree with Beach Mart that regardless whether that agreement had terminated, the fact that L&L entered into such a license is relevant to the question of the ownership of the mark. In its agreement with Morrow, L&L explicitly acknowledged *Morrow* as the owner of the "WINGS" mark with the exclusive right to use that mark. This admission calls into question L&L's later

21

contradictory claim of ownership made in the 2005 license with Beach Mart and during L&L's interactions with the PTO. Moreover, it is black letter law that a licensee's use of a mark inures to the benefit of the licensor, and the licensee does not acquire its own ownership rights. *See* 15 U.S.C. § 1055; *Estate of Coll-Monge v. Inner Peace Movement*, 524 F.3d 1341, 1347-48 (D.C. Cir. 2008); *McCarthy* § 18:52. Thus, any period during which L&L used the mark as a licensee of Morrow would not support L&L's later claim of ownership in the mark.

Second, contrary to L&L's assertion that the Morrow license terminated in 1994 when Morrow's counsel unsuccessfully demanded payment of the overdue royalties, the record is replete with disputed facts regarding that issue. In Morrow's counsel's two letters demanding payment from L&L, he did not state an intent to terminate the agreement in the event of continued non-payment nor did he articulate a cure period. To the contrary, the first demand letter expressly anticipated a continued relationship between Morrow and L&L, because the letter sought L&L's assistance in registering "WINGS" as a service mark. The record also contains conflicting evidence regarding whether L&L even received the demand letters.

These factual disputes precluded the district court from deciding on summary judgment that the Morrow license had terminated. Also left unanswered was the question of the impact of the Morrow license, for whatever its duration, on L&L's claim to ownership of the mark. Accordingly, we conclude that the district court erred in granting summary judgment to L&L on the basis that the Morrow license terminated in 1994.

ii.

22

We turn to consider the second core factual question, namely, L&L's knowledge of Morrow's interest in the mark when negotiating the 2005 license and when seeking to register the "WINGS" mark with the PTO. The district court concluded that L&L had a "good faith belief" that it owned the "WINGS" mark for retail stores and that Morrow owned the mark only for use on apparel. Again, we hold that the district court erred in resolving this disputed factual issue at the summary judgment stage of the proceedings.

Many of the same factual disputes regarding ownership of the mark underlie the separate question whether L&L intended to deceive Beach Mart and the PTO about L&L's rights in the mark. For example, as noted above, in 1993 L&L expressly acknowledged in the Morrow license Morrow's superior claim to the mark. And despite L&L's claim that Morrow's mark did not extend to use on retail stores, L&L knew that the PTO previously had denied L&L's request to register its "WINGS" mark based on Morrow's "identical" registered mark. The PTO explicitly found that because both Morrow and L&L sell clothing and use the same mark, "[c]onfusion as to the source of the goods/services is likely."

Also, in evaluating Beach Mart's request for sanctions, Judge Fox made a factual finding that L&L had acted in bad faith by attempting to conceal during discovery the existence of the Morrow license. This finding places in dispute the credibility of L&L's assertion that it acted in good faith in its dealings with Beach Mart.

We do not resolve these factual issues or weigh the conflicting evidence in the record. *See Wilson*, 893 F.3d at 218-19. We only conclude that, construing the evidence in the light most favorable to Beach Mart as the non-moving party, the record contains

several disputes of material fact that precluded entry of summary judgment in L&L's favor on any of Beach Mart's claims.[9] *See* Fed. R. Civ. P. 56(a); *Hannah P.*, 916 F.3d at 336.

## IV.

Finally, Beach Mart requests that this case be assigned to a different district judge on remand because of Judge Boyle's expressed opposition to allowing any claims to proceed to trial, regardless of their potential merit. L&L opposes reassignment of the case, arguing that such a measure is an "extreme remedy" that is unjustified under these circumstances. We agree with Beach Mart that the case should be remanded to a different district judge.

Beach Mart points to numerous objectionable statements that Judge Boyle made on the record, including:

> "I will find some way to terminate the case. I don't know how, but I will find a way."

> "I'm invested in closure. The law exists for only one purpose – that's finality."

> "When is a trial ever preferred to a summary judgment? Never."

> "I might just fish around in the case looking for closure and come up with it."

---

[9] Beach Mart also appeals the district court's decision denying Beach Mart's request for declaratory relief. This claim requires resolution of the disputed factual questions of the ownership of the "WINGS" mark and Beach Mart's entitlement to use that mark. We therefore remand the declaratory judgment claim to the district court along with Beach Mart's other claims.

Reassignment to a different district judge is appropriate in the rare circumstances when, "both for the judge's sake and the appearance of justice," reassignment furthers the public interest by "minimiz[ing] even a suspicion of partiality." *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 726 (4th Cir. 2016) (quoting *United States v. Guglielmi*, 929 F.2d 1001, 1007 (4th Cir. 1991)), *vacated on other grounds by* 137 S. Ct. 1239 (2017). In making this determination, we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.*

We conclude that reassignment to a different district judge is appropriate in this case to promote "the appearance of justice." *Id.* Judge Boyle's statements indicate that he had no intention of managing a trial with respect to any claims in this case. The judge also suggested that the parties were "not going to enjoy being in this case," further undermining the appearance of fairness. Given Judge Boyle's unequivocal opposition to trying this case, we think that reassignment to another judge for trial best ensures the "appearance of justice." *Id.* Moreover, Judge Boyle presided over the case for only about one of the seven years of this litigation, after voluminous discovery, amended pleadings, and motions practice, including the imposition of sanctions, were completed. We thus conclude that reassignment would not result in undue delay or wasted resources. For these reasons, we will remand the case for trial before a different district judge.

## V.

In sum, we affirm the district court's decision denying Beach Mart leave to amend its complaint and the court's award of sanctions, including the sanction precluding L&L from asserting equitable defenses. We vacate the remainder of the district court's judgment. We remand the case for trial before a different district judge on all Beach Mart's claims and for reconsideration of the issue of attorneys' fees at the conclusion of the case.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*
*WITH INSTRUCTIONS*